United States District Court
for the
Southern District of Florida

| | |
|---|---|
| In re application of Department of Homeland Security, Immigration and Customs Enforcement, Petitioner<br><br>v.<br><br>Parveen Dabur, Respondent. | )<br>)<br>)<br>) Civil Action No. 20-21464-mc-Scola<br>)<br>)<br>)<br>) |

**<u>Supplemental Order Following Evidentiary Hearing Granting the Government's Petition to Permit Involuntary Administration of Nutrients, Hydration, Laboratory Tests, and Routine Medical Examinations</u>**

On April 6, 2020, the Court signed an order granting the Department of Homeland Security, Immigration and Customs Enforcement (ICE) motion on an emergency ex parte basis (ECF No. 5). That order allowed ICE to involuntarily administer nutrients and hydration and to conduct laboratory tests and routine medical examinations. The Respondent Parveen Dabur is an alien in the custody of ICE and is a native and citizen of India. He has been on a hunger strike since November 30, 2019. At the time of the Petition, Dabur had missed 394 meals. He has been hospitalized several times and was most recently moved to Larkin Community Hospital on April 7, 2020 where he stayed until April 10, 2020.

Due to coronavirus constraints and technological limitations at Krome, the Court set this for a telephonic evidentiary hearing for April 13, 2020, at 11:30 a.m. In the meantime, ICE has notified the Court that its medical expert confirmed, as of April 8, the imminent necessity of involuntarily administering nutrition and hydration to Dabur.

At the April 13 hearing, Dabur appeared by telephone from Krome. The Court obtained the services of a Hindi interpreter, Swapnar Raichoudhary, to participate in the telephone conference and the entire hearing was translated for Dabur once Dabur indicated his English was not good enough to fully understand the proceedings.

At the hearing, the Court began by conducting a colloquy with Dabur to ascertain his competence to proceed with the hearing. He was coherent, engaged, and responsive. Understanding there is no right to counsel in this civil case, the Court satisfied itself of Dabur's competence and determined it appropriate to allow him to proceed pro se. Nonetheless, in an abundance of caution, at different points in the hearing the Court inquired as to Dabur's desire to cross examine witnesses, present argument, or testify on his own behalf.

At the hearing, ICE presented the testimony of Captain Luis Ortega, MD, clinical director at the Krome Detention Center. The Court is very familiar with Dr. Ortega from numerous, similar hearings. Dr. Ortega is licensed to practice medicine in Florida. Dr. Ortega wrote ICE's internal policy governing detainee hunger strikes and has been involved with over 100 such strikes in his career. Dr. Ortega is familiar with the instant strike being pursued by Dabur and the treatment provided to him by ICE. If a hunger striker is taking in fluids, he can live for a very long period of time. But if the hunger striker does not intake any fluids, he can last no more than 7 – 10 days. When a person does not intake sufficient fluids, they can suffer severe organ damage.

Dr. Ortega is familiar with the effect of hunger strikes on the human body. He also summarized prevailing medical research which utilizes weight loss percentage as a proxy for determining whether continued nutritional deprivation poses a risk of permanent or life-threatening harm. To that end, Dr. Ortega testified that weight loss of 18 to 20 percent is the threshold where bodily harm may become irreversible, noting kidney failure and arrythmias as common concerns. He further testified that a loss of 27 to 30 percent of body weight is considered incompatible with human life.

As of today, Dabur has missed 415 meals and is on day 134 of his hunger strike. His weight today is 125 pounds which is a 21% body weight loss. In this case, Dabur weighed 119 pounds which represented a 25% weight loss at the time of the Petition but since the entry of the order, he has voluntarily consumed Boost and gained some weight to 126.7 pounds. He was returned to Krome from Larkin but he has lost 1.7 pounds in the past few days. He also shows signs that he is dehydrated: low blood pressure and marked elevations in his heart rate measured from laying down to standing up.

The biggest concern is that Dabur has gone to the hospital on numerous occasions. While hospitalized, he complies with nutritional drinks but when he returns to Krome, he decreases his oral intake. There has been a fluctuation in his rate of 7 to 10 pounds each time he is hospitalized. The length of the hunger strike of is of concern and the use of Boost or nutritional supplements is insufficient to maintain health over a long period of time. The longer the hunger strike, the more problematic the deprivation of the meals. Dabur will have to drink more nutritional supplements than he is drinking now.

According to Dr. Ortega, to be fed through a nasogastric tube or through voluntarily drinking nutritional supplements yields the same results -- if both are taken regularly and in the same amount. The nasogastric tube ensures that the person receives the correct amount of nutrition and ensures a consistent and gradual weight gain.

In Dr. Ortega's opinion, Dabur is not drinking enough nutritional supplements to maintain his health. Additionally, Dabur wants to take the

total amount needed in two feedings per day. But Ortega recommends three feedings instead of two to avoid intermittent fasting. Because Dabur won't agree to drink three times per day instead of two times per day, use of the nasogastric tube is necessary to maintain Dabur's health and life.

It is extremely important to take blood on a regular basis to monitor Dabur's health and to look for signs of organ failure.

The Court finds Dr. Ortega qualified to offer his opinions and accepts his testimony, which was comprehensive, credible, and compelling.

Allowing hunger strikers to be released from immigration custody would have a detrimental effect on the ability of ICE to maintain order at Krome. It would lower morale of the staff and detainees and would cause a wave of hunger strikes at Krome and nationwide.

A hunger strike has a negative impact on the facility. The striker takes more attention from the staff and takes attention away from other detainees. There is a need to use nurses and doctors. Staff must begin monitoring the food and fluid intake of the striker.

A hunger strike also results in disruption by necessitating court hearings, especially in light of the current restrictions due to the coronavirus. (The Court notes the presence of several ICE and other government personnel participating in this telephonic court hearing).

Krome must have the trust and confidence of the detainees who must believe they will be provided with the best medical care. To allow a hunger striker to get sicker or worse would create a danger to the staff. Other detainees will lose confidence in the staff and either not report their own medical issues or act out because of a perceived lack of caring by the staff. When these hunger strikers are in the medical unit, other patients see the constant attention the strikers are receiving and believe their own needs are underserved. Assistant Field Office Director Liana J. Castano is responsible for providing adequate medical care to all the detainees.

When a detainee refuses to eat, a facility has three choices: release the detainee, allow the detainee to die, or force feed the detainee. The Court has no authority to order the release of Dabur and will not allow him to die. Therefore, the Court has no choice but to order as follows:

- ICE and Larkin staff and physicians are authorized, through competent medical authority, to involuntarily draw blood from Dabur; to insert urinary catheters to obtain urine for urinalysis; to conduct weigh-ins; and to conduct medical examinations.

- ICE and Larkin staff and physicians are authorized to involuntarily administer nutrition and hydration to Dabur, through a nasogastric tube and/or intravenous line, as necessary to prevent injury, further

dehydration, malnourishment, organ failure, or loss of life. Should Dabur resist the involuntary administration of nutrition and hydration, ICE and Larkin staff and physicians are authorized, through competent medical authority, to restrain Dabur as necessary to accomplish such involuntary administration of nutrition and hydration.

- If Dabur opts to discontinue his hunger strike by consuming a sufficient amount of nutrients during a sufficient number of times per day as determined by the medical staff at ICE and Larkin, then this order will not apply to him for so long as his food and water consumption is voluntary and continuous and sufficient as determined by the medical staff at ICE and Larkin in their clinical judgment and in consideration of the objective data including but not limited to weight gain.

- The Government shall file a status report with the Court on **May 13, 2020**, detailing the status of Dabur's hunger strikes, Dabur's current weight and what, if any, involuntary measures have been taken as authorized by this order.

This Order supersedes the first order (ECF No. 5) and shall remain in effect until further order of the Court.

**Done and ordered** at Miami, Florida on April 13, 2020.

_____
Robert N. Scola, Jr.
United States District Judge

Copy via personal service by ICE:
Parveen Dabur
Krome Service Processing Center
18201 S.W. 12th Street
Miami, Florida 33194